## STATE OF CONNECTICUT *v.* MADALENA SILVA
### (SC 17638)

Rogers, C. J., and Norcott, Vertefeuille, Zarella and Schaller, Js.

Argued September 20, 2007—officially released February 12, 2008

*Ronald G. Weller*, senior assistant state's attorney,
with whom, on the brief, were *Jonathan C. Benedict*,

state's attorney, and *Craig P. Nowak*, assistant state's attorney, for the appellant (state).

*Kim Coleman*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The defendant, Madalena Silva, appealed to the Appellate Court from the judgment of conviction, rendered after a jury trial, of two counts of interfering with an officer in violation of General Statutes (Rev. to 2003) § 53a-167a,[1] claiming that the state did not present sufficient evidence to support her conviction.[2] The Appellate Court majority agreed with the defendant's claim, reversing the judgment of the trial court and remanding the case with direction to render judgment of not guilty. *State* v. *Silva*, 93 Conn. App. 349, 360–61, 889 A.2d 834 (2006).[3] Thereafter, we granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly

---

[1] General Statutes (Rev. to 2003) § 53a-167a provides: "(a) A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties.

"(b) Interfering with an officer is a class A misdemeanor."

[2] On appeal to the Appellate Court, the defendant also claimed that the trial court improperly instructed the jury as to consciousness of guilt. See *State* v. *Silva*, 93 Conn. App. 349, 351, 889 A.2d 834 (2006). Because the Appellate Court reversed the judgment of the trial court and remanded the case with direction to render judgment of not guilty, the Appellate Court did not reach the jury instruction claim. Id., 361 n.9. The defendant did not brief this issue on appeal to this court. Accordingly, we remand this case to the Appellate Court with direction to consider the defendant's claim regarding the jury instruction.

[3] Judge Dranginis dissented from the majority opinion of the Appellate Court. *State* v. *Silva*, supra, 93 Conn. App. 361. Noting that "intent is a question to be determined by the trier of fact"; id., 363 (*Dranginis, J.*, dissenting); she concluded that "[a] jury reasonably could have found that the defendant's behavior in failing to provide identification to the officers at the scene and leaving the scene when instructed not to leave hindered the officers' performance of their duties under the motor vehicle laws of this state." Id., 365. Accordingly, Judge Dranginis would have affirmed the judgment of the trial court. Id., 362.

conclude that there was insufficient evidence to support the defendant's conviction on two counts of interfering with an officer in violation of . . . § 53a-167a?" *State v. Silva*, 277 Conn. 931, 896 A.2d 103 (2006). We now conclude that the Appellate Court's determination that the evidence was insufficient to support the defendant's conviction was improper, and, accordingly, we reverse its judgment.

The Appellate Court opinion sets forth the following facts, which the jury reasonably could have found. "At about 5 p.m. on June 22, 2003, the defendant's brother was involved in an automobile collision on North Avenue in Bridgeport. All three vehicles involved in the collision had to be towed from the scene because of major damage, and the defendant's brother complained of neck and back pain. Officers Jason Ferri and Todd Sherback of the Bridgeport police department, who were on routine motor patrol, went to the accident scene to help the investigating officer, Officer Mark Gudauskas, complete necessary paperwork. To avoid obstructing the heavy rush hour traffic, Ferri and Sherback parked their police cruiser in a nearby private parking lot.

"As the defendant drove by the scene, Ferri and Sherback observed her stop abruptly on the street, back up, execute a three point turn and back quickly into the parking lot where they had parked their police cruiser, nearly causing a collision. They also saw that her vehicle did not have a required front license plate. The officers told the defendant that they were going to issue an infraction ticket for unsafe backing and no front license plate. At that time, the officers asked the defendant for her driver's license, automobile registration and insurance card. She asked to be let alone. To the officers' . . . request, she replied, 'You Bridgeport cops are all the f__king same. To protect and serve? Yeah right, my ass.' When the officers repeated their request, she

stated, 'F__k you. I ain't giving you s__t, asshole. I'm taking my brother to the hospital, and you are not f__king stopping me.' She was loud and belligerent, stamping her foot, and a crowd of twenty-five to thirty people gathered. At that time, the officers did not issue the infraction ticket because the defendant became very loud and angry when asked for her registration. At some unknown time, however, the officers did issue an infraction ticket.

"Ferri and Sherback decided to arrest the defendant for breach of the peace and interfering with an officer after her belligerent responses to their requests. The defendant's mother, who [also] was present [at the scene] with the defendant's father, [interrupted] the officers' investigation by stating that her daughter had done nothing wrong. Because of this [interruption], the defendant was not [immediately] arrested. At that time, as the officers tried to talk to the defendant's mother, the defendant immediately ran into the street, entered a vehicle and drove away, leaving her automobile in the parking lot. Ferri had told the defendant not to leave the scene and then asked the defendant's mother to use her cellular telephone to call the defendant. The defendant's mother explained to the officer that the defendant was bringing her brother to a hospital. After speaking with the defendant [on the cellular telephone], her mother told the officers that the defendant would return after she went to the hospital.

"The officers waited for one-half hour and conferred with their supervisor, Sergeant Stephen Lougal, whom they called to explain that they intended to arrest the defendant. They also wanted Lougal to speak to the defendant's mother about the mother's complaint that her son had not received medical assistance. The officers then went to the nearer of the two hospitals in Bridgeport. They located the defendant at the emergency room and arrested her for breach of the peace

and interfering with an officer.[4] When the officers approached her, the defendant stated to them, 'Not you assholes again,' and told her friend the officers were coming for her." *State* v. *Silva*, supra, 93 Conn. App. 352–54.

"The state charged the defendant in an amended information with two counts of interfering with a[n] . . . officer and two counts of breach of the peace [in the second degree]. The first count of interfere[ing] with a[n] . . . officer charged that the defendant did so 'by saying to [the officer] when requested to produce [her] license, registration and insurance information during a motor vehicle stop, "F__k you. I ain't giving you s__t, asshole . . . ." ' The second count charged the defendant with interfering with an officer 'by running from [the officer] and fleeing on foot across North Avenue and entering the driver's side of an unidentified green vehicle which left the scene at a high rate of speed, after being instructed by [the officer] not to leave the scene . . . .' " Id., 351.

On appeal to the Appellate Court, the defendant claimed that the evidence was insufficient to support her convictions of both counts of interfering with an officer in violation of § 53a-167a. The Appellate Court majority agreed with the defendant. Citing *State* v. *Williams*, 205 Conn. 456, 473–74, 534 A.2d 230 (1987), the Appellate Court noted that a defendant must engage in physical conduct or "fighting words" in order to violate § 53a-167a and determined that the defendant's verbal insults and use of profanity did not constitute fighting words under the facts of the present case. *State* v. *Silva*,

---

[4] At trial, the defendant moved for a judgment of acquittal on both counts of breach of the peace at the close of the state's case, which motion the trial court granted as to the charge pertaining to the defendant's conduct at the hospital. Thereafter, the jury acquitted the defendant on the other count of breach of the peace, which arose out of her conduct at the scene of her brother's accident.

supra, 93 Conn. App. 354–55. The Appellate Court further concluded that "[t]he failure to turn over the [defendant's license, registration and insurance information] alone could not support a conviction [of § 53a-167a] because the legislature penalized that conduct itself as an infraction under General Statutes § 14-217."[5] Id., 355. The Appellate Court further concluded that the evidence was insufficient to support the defendant's conviction of interfering with an officer in violation of § 53a-167a for leaving the scene of the accident in order to bring her injured brother to the hospital. Id., 359–60. In doing so, the Appellate Court concluded that "the defendant's conduct in openly going to a hospital and leaving her mother and her automobile behind with the police are circumstances that render evidence of the defendant's conduct insufficient to support a reasonable finding that the defendant intentionally sought to delay the officer's efforts to issue her an infraction ticket." Id., 360.[6] This certified appeal followed.

---

[5] General Statutes § 14-217 provides: "No person who is operating or in charge of any motor vehicle, when requested by any officer in uniform, by an agent authorized by the commissioner [of motor vehicles] who presents appropriate credentials or, in the event of any accident in which the car he is operating or in charge of is concerned, when requested by any other person, may refuse to give his name and address or the name and address of the owner of the motor vehicle or give a false name or address, or refuse, on demand of such officer, agent or other person, to produce his motor vehicle registration certificate, operator's license and any automobile insurance identification card for the vehicle issued pursuant to section 38a-364 or to permit such officer, agent or such other person to take the operator's license, registration certificate and any such insurance identification card in hand for the purpose of examination, or refuse, on demand of such officer, agent or such other person, to sign his name in the presence of such officer, agent or such other person. No person may refuse to surrender his license to operate motor vehicles or the certificate of registration of any motor vehicle operated or owned by him or such insurance identification card or the number plates furnished by the commissioner for such motor vehicle on demand of the commissioner or fail to produce his license when requested by a court. Violation of any provision of this section shall be an infraction."

[6] Judge Dranginis dissented from the majority opinion of the Appellate Court. See footnote 3 of this opinion; see also *State* v. *Silva*, supra, 93 Conn. App. 361.

As a preliminary matter, we set forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence." (Internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 842–43, 911 A.2d 1086 (2007).

The state first claims that, pursuant to *Aloi*, the evidence was sufficient to support the defendant's conviction of the first count of interfering with an officer for refusing to provide her identification and motor vehicle documents. We agree with the state, and conclude that *Aloi* controls our disposition of the first count in the present case.

In *State* v. *Aloi*, supra, 280 Conn. 826, the defendant was convicted of interfering with an officer in violation of § 53a-167a for refusing to provide his identification to a police officer who was investigating possible criminal activity pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In examining the language of the statute, we acknowledged that, "§ 53a-167a defines interfering to *include* obstruction, resistance, hindrance or endangerment. . . . Those words . . . have a broad scope. By using those words it is apparent that the legislature intended to prohibit any act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . Because a refusal to provide identification in connection with a *Terry* stop may hamper or impede a police investigation into apparent criminal activity, we see no reason why such conduct would be categorically excluded under the expansive language of § 53a-167a." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Aloi*, supra, 832–33. We

further determined that the evidence adduced at trial was sufficient to establish that the defendant's refusal to identify himself to the police hindered the police in their investigation of possible criminal activity, i.e., an alleged trespass. Specifically, the evidence established that the police had received a complaint of a specific named individual trespassing on private property and that when they responded to the complaint, the police observed two individuals at the scene. On the basis of that complaint, we found that "obtaining the identity of those individuals was a logical and necessary step in the police investigation of the complaint." Id., 843. We further reasoned that "[a]lthough the police eventually ascertained the identity of the defendant, his refusal to comply with the [officer's] request for identification . . . impeded the police to some appreciable degree." Id., 843–44. Accordingly, we concluded that the evidence was sufficient to support the defendant's conviction of interfering with an officer in violation of § 53a-167a. Id., 844.

In the present case, the evidence established that the officers informed the defendant that they were going to issue her an infraction ticket for unsafe backing and for driving without a front license plate. The officers then requested that the defendant provide her driver's license, automobile registration and insurance information to enable them to issue the ticket. The defendant refused to do so. The officers repeated their request and the defendant refused again, swearing at the officers, stamping her feet and telling the officers that she was leaving to take her brother to the hospital. At that point, a crowd of twenty-five to thirty people had gathered in the area of the accident. *State* v. *Silva*, supra, 93 Conn. App. 352–53. Construing the foregoing evidence in the light most favorable to sustaining the jury's verdict, and in light of our decision in *State* v. *Aloi*, supra, 280 Conn. 844, we conclude that the jury reasonably could have

found that the defendant's conduct impeded the officers in the performance of their duties. Accordingly, we further conclude that the Appellate Court improperly determined that the evidence was insufficient to support the defendant's conviction of interfering with an officer in violation of § 53a-167a for refusing to provide her driver's license and other motor vehicle documents to the officers.

The defendant claims that evidence demonstrating that she refused to provide her driver's license and other motor vehicle documents to the officers is insufficient to support a conviction of interfering with an officer in violation of § 53a-167a because such conduct is prohibited by § 14-217, which provides that refusal to provide identification to a police officer when requested is an infraction. We rejected this same reasoning in *Aloi*. Id., 833.

In *State* v. *Aloi*, 86 Conn. App. 363, 370, 861 A.2d 1180 (2004), the Appellate Court had reversed the defendant's conviction concluding that his failure to provide identification to a police officer was not sufficient to support a conviction of interfering with an officer in violation of § 53a-167a. In doing so, the Appellate Court reasoned that because § 14-217 makes it an infraction for a motor vehicle operator to refuse to provide identification to a police officer when requested, the legislature must not have intended § 53a-167a to encompass such refusal. Id., 370–71. We disagreed with the reasoning of the Appellate Court, and concluded that §§ 53a-167a and 14-217 "address appreciably different concerns in significantly different ways . . . ." *State* v. *Aloi*, supra, 280 Conn. 836. "Furthermore, the broad language of § 53a-167a reflects a recognition by the legislature that, because police officers are confronted daily with a wide array of diverse and challenging scenarios, it would be impractical, if not impossible, to craft a statute that describes with precision exactly

what obstructive conduct is proscribed. In other words, § 53a-167a necessarily was drafted expansively to encompass a wide range of conduct that may be deemed to impede or hinder a police officer in the discharge of his or her official duties. Because § 53a-167a reflects the intent of the legislature to establish a broad proscription against conduct that intrudes upon the ability of a police officer to perform his or her duties, we are unwilling to conclude that the legislature did not intend for § 53a-167a to cover a refusal to provide identification—regardless of the extent to which such a refusal actually may hinder or obstruct the police in any particular set of circumstances—merely because § 53a-167a does not expressly refer to that conduct." Id., 837.

The state also claims that the Appellate Court improperly concluded that the evidence was insufficient to support the defendant's conviction of the second count of interfering with an officer because the evidence established that she left the scene of the accident after being instructed to remain. In response, the defendant asserts that the Appellate Court properly determined that the defendant's conduct was not sufficient to support her conviction of interfering with an officer in violation of § 53a-167a because she did not have any knowledge that she was being arrested at the scene of the accident and that she fled to take her brother to the hospital and not to avoid discovery or apprehension. We agree with the state.

The following additional facts that the jury reasonably could have found are necessary to the resolution of this claim. The officers decided to arrest the defendant for breach of the peace and interfering with an officer for her refusal to provide her identification and motor vehicle information to the officers. See *State v. Silva,* supra, 93 Conn. App. 353. At that time, the defendant's mother began telling the officers to leave her daughter alone and stating that her daughter had

done nothing wrong. Id. While the officers were speaking to the defendant's mother, the defendant ran into the street and drove away in another vehicle, leaving her vehicle in the parking lot. Id. Once the defendant left, the officers asked the defendant's mother to call her and instruct her to come back. The mother did so, and informed the officers that the defendant had stated that she would not return until after she took her brother to the hospital. Id. The defendant did not return to the scene within thirty minutes, at which point the officers went to the hospital, where they found the defendant and arrested her. Id., 353–54. As the officers approached her, the defendant began swearing at them and told her friend that the officers were coming for her. Id., 354.

On appeal, the Appellate Court concluded that "the defendant's conduct in openly going to a hospital and leaving her mother and her automobile behind with the police are circumstances that render evidence of the defendant's conduct insufficient to support a reasonable finding that the defendant intentionally sought to delay the officer's efforts to issue her an infraction ticket." Id., 360. We disagree.

In examining the defendant's claim, we are mindful that, "[i]n reviewing a sufficiency of the evidence claim . . . we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Aloi*, supra, 280 Conn. 842.

As we have explained previously in this opinion, "§ 53a-167a defines interfering to *include* obstruction, resistance, hindrance or endangerment. . . . Those words . . . have a broad scope. By using those words it is apparent that the legislature intended to prohibit

any act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . The [defendant's] act, however, does not have to be wholly or partially successful . . . [nor must it] be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 832–33.

It is well established that the question of intent is purely a question of fact. "Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 784, 760 A.2d 82 (2000).

In the present case, the evidence established that the defendant was aware that the police were trying to issue her an infraction ticket and that she refused to provide her identification and other motor vehicle documents to the officers. Then, while the officers were still addressing the defendant, the defendant's mother began telling the officers to leave her daughter alone and that she had done nothing wrong. As a result, the officers turned their attention to the defendant's mother to explain the situation. While the officers did so, the defendant took this opportunity to flee the scene by running into the street, getting into a vehicle and driving away. As a result of the defendant's conduct, therefore,

the officers were unable to effect her arrest for breach of the peace and interfering with an officer at the scene. The evidence further established that the officers specifically had instructed the defendant to remain at the scene, an instruction that she ignored. On the basis of this evidence, we conclude that the jury reasonably could have determined that the defendant intended to hinder and obstruct the police in the performance of their duties by leaving the accident scene and violating the officers' direction to remain.

The defendant seems to claim that the jury reasonably could not have found that she had the requisite intent to violate § 53a-167a when she left the scene to bring her brother to the hospital. We find this claim unavailing. "Intent is a question of fact [for the jury], the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." *State* v. *Robertson,* supra, 254 Conn. 784. "When [a] conclusion is one that is dependent on the resolution of conflicting evidence, it should ordinarily be left to the jury for its judgment." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.,* 255 Conn. 20, 45, 761 A.2d 1268 (2000). In the present case, there was a conflict between the defendant's testimony and other evidence presented regarding her intent. After hearing this evidence, the jury determined that the plaintiff had the requisite intent to support a violation of § 53a-167a. Keeping in mind that we must construe the evidence in the light most favorable to sustaining the jury's verdict; *State* v. *Aloi,* supra, 280 Conn. 842; the jury reasonably could have found that the defendant had the requisite intent to violate § 53a-167a.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claim on appeal.[7]

In this opinion the other justices concurred.

---

[7] See footnote 2 of this opinion.