STATE OF CONNECTICUT *v.* PETER KALPHAT
(AC 32742)

Robinson, Bear and Schaller, Js.

Argued January 17—officially released March 13, 2012

*Adele V. Patterson,* senior assistant public defender, for the appellant (defendant).

*Sarah Hanna,* assistant state's attorney, with whom, on the brief, were *Maureen Platt,* state's attorney, and *Jason Germain,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Peter Kalphat, appeals from the judgment of conviction, rendered after a jury trial, of possession of a controlled substance with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b).[1] On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to support his conviction and (2) the trial court failed to instruct the jury that the intended location of the sale had to be within a school zone. We agree with the defendant's first claim and, accordingly, reverse in part the judgment of the trial court.[2]

The following facts, as reasonably could have been found by the jury, are relevant to this appeal. On the

---

[1] The defendant also was convicted of possession of a cannabis-type substance with intent to sell by a person who is not drug-dependent in violation of General Statutes §§ 53a-8 and 21a-278 (b). That conviction, however, is not at issue in this appeal.

[2] Because there was insufficient evidence to support the defendant's conviction of possession of a controlled substance with intent to sell within a school zone, we need not consider the propriety of the court's instructions on the elements of that crime.

evening of August 6, 2008, an anonymous person telephoned 911 to report that people were smoking "weed" at 136 Central Avenue in Waterbury, which is located within 1500 feet of Driggs Elementary school. In response to the call, Officers Michael Modeen and Martin Scanlon were dispatched to the two-family home. The defendant lived in the first floor apartment. Modeen knocked on the front door of the house. He and Scanlon both detected the odor of raw marijuana. They also heard voices coming from the rear of the house. Scanlon notified their supervisor, Sergeant Charles Sheperd, of the situation, and Sheperd, thereafter, arrived at the scene. Scanlon and Sheperd walked down the driveway toward the rear of the house, while Modeen stayed near the front door. Scanlon smelled burning marijuana coming from the rear of the house. Errol Burke and Sandy Kalphat were sitting on the back porch. Burke was smoking marijuana. There also was a small, clear plastic bag containing a green, plant-like substance on the table, which Burke picked up and tried to hide on his person. Scanlon placed Burke under arrest. Sandy Kalphat attempted to interfere with Burke's arrest, and Scanlon arrested her as well.

As Burke and Sandy Kalphat were being arrested, the defendant came through the back door but quickly retreated back inside the house. The defendant grabbed a large, clear plastic container, which held marijuana in brick form, weighing approximately ten pounds, and attempted to leave via the front door. Modeen, who was waiting near the front door, told the defendant to drop the container. The defendant ran into the common front hallway of the house, and Modeen followed him, tackling him to the floor. Scanlon, who from the rear of the house heard Modeen's efforts to restrain and to arrest the defendant, went through the first floor apartment, into the common hallway, and assisted Modeen.

After members of the vice and intelligence division of the Waterbury police department executed a search warrant, their further investigation of the defendant's apartment revealed a scale and plastic wrap that had traces of marijuana on it. In addition, a shoebox that contained a smaller scale, plastic ziplock bags and $3033 in cash was found on the kitchen table. A key to the house was located on the table near the shoebox.

In a substitute long form information, the state charged the defendant, in count one, with possession of a cannabis-type substance with intent to sell by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-8 and, in count two, with possession of a controlled substance with intent to sell within 1500 feet of a public school in violation of § 21a-278a (b). Following a jury trial, the defendant was convicted on both counts and was sentenced on count one to a term of ten years incarceration, execution suspended after a mandatory five years, with three years probation, and, on count two, to a consecutive mandatory term of three years incarceration, for a total effective sentence of thirteen years incarceration, execution suspended after a mandatory eight years, with three years of probation.[3] Following the imposition of sentence, the defendant filed the present appeal, contesting only his conviction of possession of a controlled substance with intent to sell within 1500 feet of a public school.

The defendant claims that the evidence was insufficient to prove that the location of the intended sale of the seized marijuana was within 1500 feet of a public school. He argues: "The fact that drugs are seized at a particular location is not, alone, sufficient to prove the

[3] The defendant filed motions for a judgment of acquittal at the close of the state's case-in-chief, at the close of all evidence and, again, just before sentencing.

intent to sell it at that location." He contends that, although the state put forth sufficient evidence to convict him of possession of marijuana with intent to sell, there was no evidence that any sale or distribution of the marijuana was intended to occur in a public school zone.[4] We agree.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On

---

[4] There also was no evidence of any actual sale or distribution having taken place.

appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded [on] the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 656–58, 1 A.3d 1051 (2010).

The defendant challenges his conviction of one count of possession of a controlled substance with intent to sell within 1500 feet of a public school in violation of § 21a-278a (b). Section 21a-278a (b) prohibits in relevant part any person from "possessing with the intent to sell or dispense . . . any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising . . . a public or private secondary or elementary school . . . ." Section 21a-278a (b) further provides in relevant part: "To constitute a violation of this subsection, an act of . . . possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private secondary or elementary school . . . ." Pursuant to § 21a-278a

(b), therefore, the state is required to prove "that the defendant intended to sell or dispense [the] drugs in his or her possession at a specific location, which location happens to be within 1500 feet of a public [elementary school], among other geographical designations." (Internal quotation marks omitted.) *State* v. *Hedge*, supra, 297 Conn. 658.

"Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Silva*, 285 Conn. 447, 460, 939 A.2d 581 (2008), aff'd after remand, 113 Conn. App. 488, 966 A.2d 798 (2009). "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Francis*, 90 Conn. App. 676, 681, 879 A.2d 457, cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005).

The state argues that the jury reasonably inferred that the defendant intended to sell marijuana at the location where he and the marijuana were seized, 136 Central Avenue, which the evidence established was within 1500 feet of a public elementary school. The state contends that "given the presence of nearly ten [pounds] of marijuana, two scales, ziplock bags and $3033 cash at 1[3]6 Central Avenue, it was reasonable for the jury to infer that the defendant intended to package and sell the marijuana. Because the defendant does not dispute these facts, he also cannot dispute the reasonable inference that the defendant intended to

package and distribute the marijuana from 1[3]6 Central Avenue . . . ." The defendant argues, however, that this final supposed inference is nothing more than improper speculation, there having been no evidence regarding a sale from that location or the likelihood of a sale from that location. We agree with the defendant.

"The essential elements of the crime of sale of narcotics within 1500 feet of a school are proof that the defendant sold narcotics and proof that the location of the transaction was within 1500 feet of a school." *State* v. *King*, 289 Conn. 496, 520, 958 A.2d 731 (2008). "Mere possession of narcotics with an intent to sell at some unspecified point in the future, at some unspecified place, is not enough [to prove a violation of § 21a-278a (b)]." (Internal quotation marks omitted.) *State* v. *Hedge*, supra, 297 Conn. 659–60.

In this case, the defendant does not contest his conviction of possession of a cannabis-type substance with intent to sell by a person who is not drug-dependent; he contests only his conviction of possession of a controlled substance with intent to sell within 1500 feet of a school, arguing that there was absolutely no evidence concerning a sale or the likelihood of a sale from the location where the drugs were seized. He argues that the only evidence regarding the likely place of sale of the confiscated marijuana was the testimony of Sergeant Gary Angon, a member of the vice and intelligence division of the Waterbury police department, that when marijuana arrives in Waterbury in a compressed block form, it gets broken down and repackaged into small ziplock bags for sale on the street. This, he argues, does not lead to a reasonable inference that the sales would be conducted from the defendant's home. We agree.

The evidence in this case tended to prove that the defendant was carrying a large, clear plastic container

that held approximately ten pounds of compressed marijuana. Also present in the defendant's house was plastic wrap with marijuana residue on it and a scale. Additionally, there was a shoe box on the kitchen table that contained a smaller scale, several plastic ziplock bags and $3033 in cash. Angon, the only person who testified about marijuana distribution, explained to the jury that: "the marijuana that comes into Waterbury primarily comes in—in bulk, and it comes compressed, so it's easier to transport. If the marijuana's all fluffed out like a pillow, it's a lot harder to get it in without someone discovering that you're moving a large amount of marijuana, so they compress it, they wrap it tightly in plastic, and then they'll use dryer sheets, there's several different methods, but dryer sheets is a very popular one for marijuana to throw off detection . . . ." Angon also explained that people involved in the drug trade typically, use "[a] small digital scale . . . for weighing out drugs before they're packaged" and that "a gallon sized bag is used for pounds, and the smaller ziplock bags are used for ounces." He also opined that a common way of selling $20 worth of marijuana in Waterbury is to package it in knotted sandwich bags. Angon testified that he saw nothing in the defendant's home that was indicative of marijuana that was kept for personal use. He stated: "People have had ounces for personal use. It's used typically [in] a smaller amount just because you have the problem of storing it. It's a . . . plant. It's like every other plant. Once you cut it, it decays, it dries out, it rots . . . after a while, it just won't be any good, so you're not going to have large amounts of it for personal use because it will be no good. That's why they try to vacuum pack it and seal it in bags, other than trying to hide the odor, try to keep it as fresh as possible." Angon also opined that the street value of marijuana typically was approximately $1500 per pound. He also opined that "you wouldn't see someone

that was just involved in personal use of marijuana have nine pounds of marijuana, a pound scale, a smaller digital scale and these baggies. . . . [O]ne of the things that we look for when someone is possessing drugs is their amount of cash that they have on them, and $3000 worth of cash is a sign that someone's a drug dealer."

Although the jury might reasonably have inferred on the basis of the evidence that the marijuana seized from the defendant's home would be repackaged for sale, the record is devoid of evidence from which the jury reasonably could have determined the precise location or locations of any such sales. Consequently, although the jury reasonably could have inferred that the defendant was planning to repackage and sell the marijuana, we conclude that, on the record before it, the jury only could speculate about the precise location or locations of any such sales, including, but not limited to, whether the defendant intended to sell such marijuana at or near his home.

The state relies on the presence of the marijuana and the evidence seized from the box on the kitchen table in the defendant's home to support the defendant's conviction for possession with intent to sell within a school zone. This box contained ziplock bags, a scale and $3033 in cash. The state argues that the presence of these items on the kitchen table, along with the large quantity of marijuana, leads to the reasonable inference that the marijuana was going to be packaged at that location for sale, and that inference leads to the next inference that the sales were going to take place at that location as well. Simply put, the state argues that because it reasonably could be inferred that the packaging of the marijuana was going to take place at the defendant's home, that it also would be reasonable to infer that the sales would take place there. We cannot agree. In the absence of any evidence that would lead to a reasonable inference that the defendant intended to sell marijuana

at or near his home, the defendant is entitled to a judgment of acquittal on the charge that he violated § 21a-278a (b). Compare *State* v. *Reid,* 123 Conn. App. 383, 393–94, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010) (evidence presented included defendant apprehended with drugs packaged for sale after he stayed for extended period of time in parking lot located in area known as open air drug market, in high crime area, that was center of heroin drug trade, within 1500 feet of public housing project), with *State* v. *Hedge,* supra, 297 Conn. 660–61 (record devoid of evidence indicating whether defendant in vehicle intended to sell drugs within 1500 feet of public housing project because "although the fact that [the housing project was] a place where drugs frequently are sold might make it more likely that the defendant was planning to sell drugs there as opposed to some other discrete location, one can only speculate as to whether the defendant intended to sell drugs at or within 1500 feet of [the housing project]").

The judgment is reversed only as to the conviction of possession of a controlled substance with intent to sell within 1500 feet of a public school and the case is remanded with direction to render judgment of not guilty as to that offense only. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.