******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* THOMAS STOVALL
(SC 19167)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued October 28, 2014—officially released April 28, 2015*

*John W. Cerreta*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Richard L. Palombo, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Thomas Stovall, was convicted after a jury trial of possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b) and other narcotics and firearm charges.[1] The sole issue in this appeal is whether the Appellate Court, although it reversed in part the trial court's judgment and remanded the case for a new trial due to improper jury instructions, properly concluded that the state had produced sufficient evidence at trial to prove beyond a reasonable doubt that the defendant intended to sell narcotics within 1500 feet of a public housing project. See *State* v. *Stovall*, 142 Conn. App. 562, 572, 64 A.3d 819 (2013). The defendant contends that although the evidence adduced at trial may have suggested a general intent to sell narcotics, it was not sufficient to satisfy the state's burden of proving beyond a reasonable doubt that he intended to sell narcotics at a particular location within 1500 feet of a public housing project. We agree and reverse the judgment of the Appellate Court with respect to the conviction of possession of narcotics with intent to sell within 1500 feet of a housing project.

The jury reasonably could have found the following facts, as set forth in the Appellate Court opinion. "On January 16, 2010, at approximately midnight, a raid team from the Bridgeport [P]olice [D]epartment executed a search warrant for apartment 449 in building four of the Charles F. Greene Homes housing complex (Greene Homes), a federally funded housing project. . . . [T]he officers detained and secured five people—Librea Patrick, the tenant of the apartment, Latavia Goss, Roderick Williams, Shawndell Gaynard and the defendant. Patrick's two small children were allowed to remain sleeping. All of the adults were searched. The search of the defendant revealed $1125 in mixed denominations. After [the police] search[ed] all of the adults, Patrick remained in the apartment and the other suspects were transported to the police station. . . .

"The search of the apartment revealed a [D]epartment of [S]ocial [S]ervices card and incident report belonging to the defendant in one of the bedrooms, sixteen cellular phones found throughout the apartment, an empty scale box, two razor blades with a residue that was later determined to be cocaine and small ziplock bags in the kitchen. A search of the hallway closet across from the kitchen revealed a shoe box that contained a loaded .38 caliber revolver, a loaded .32 caliber revolver, a Remington bullet box with two live bullets inside, and several letters that referenced Tom-Tom, Thomas and Tomster. The contents of the shoe box were collected as evidence, but the shoe box itself was not. An officer also searched the clothing in the closet. In a heavy, men's winter jacket, he found thirteen orange-tinged plastic ziplock bags, each con-

taining a white, rock-like substance that was later determined to be crack cocaine. The jacket was not collected as evidence." (Internal quotation marks omitted.) Id., 565.

"The sole witness who testified about the ownership of the contents of the items in the hallway closet was Patrick. She testified that she allowed the defendant to keep a box of sneakers in her hallway closet. Patrick also testified that the defendant was allowed to keep coats there [in exchange for $20 to $30 a month] . . . ." (Internal quotation marks omitted.) Id., 570.

"Patrick testified that she and the defendant became friends in 2005 and that she knew him as Tom Tom. She also testified that the defendant would come to her apartment two to three times a week and that Patrick would see him around Greene Homes two to three times per week. When at Patrick's apartment, the defendant would visit her and her friend, Goss. Additionally, Patrick testified, Greene Homes is known as an area where narcotics can be purchased, and she had never seen the defendant sell drugs in her apartment or in the area of Greene Homes.

"William Reilly, a detective with the Bridgeport [P]olice [D]epartment who participated in the execution of the warrant, also testified. He testified that Greene Homes is a high crime and drug trafficking area. . . . During direct examination, Reilly identified the sixteen cell phones recovered from the apartment, the small empty ziplock bags and two razor blades with narcotics residue and the thirteen orange-tinted ziplock bags that contained crack cocaine. Based on his training and experience, Reilly stated that the empty ziplock bags were consistent with the type generally used to package crack cocaine, that the razors were used to cut up narcotics into smaller pieces so as to fit in the small ziplock bags and that the substance in the thirteen orange-tinted bags was crack cocaine. Reilly testified that based on the way the drugs were packaged, individually, the crack cocaine was packaged to be resold and that the street value of one bag was $10. Furthermore, [he testified that] the absence of a crack pipe or another device to ingest crack cocaine suggested that the drugs were being sold out of the house." (Internal quotation marks omitted.) Id., 572–73.

"In a substitute long form information, the defendant was charged with possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell within 1500 feet of a public housing project and two counts of criminal possession of a firearm. On the basis of the evidence presented at trial, the jury found the defendant guilty on all counts [and the court imposed a total effective sentence of seventeen years]." Id., 566; see id., 566 n.2.

The defendant then appealed to the Appellate Court,

claiming, inter alia, that the state had failed to produce sufficient evidence to support his conviction of possession of narcotics with intent to sell within 1500 feet of a housing project. After reviewing the evidence, the Appellate Court rejected the defendant's sufficiency claim but found that the trial court had improperly instructed the jury on that possession charge and reversed the defendant's conviction and remanded the case for a new trial on that charge; id., 578, 582; from which the defendant, on the granting of certification, now appeals.[2] He contends that the Appellate Court improperly concluded that the state satisfied its evidentiary burden with respect to the charge of possession of narcotics with intent to sell within 1500 feet of a public housing project. We agree and, accordingly, reverse in part the judgment of the Appellate Court.[3]

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Jordan*, 314 Conn. 89, 106–107, 101 A.3d 179 (2014).

It is well established that "[i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . This does not require that each subordinate conclusion established by or inferred from evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . . Nevertheless, because intent . . . is an element of the crime . . . that intent must be proven beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126–27, 646 A.2d 169 (1994).

"Due process requires that the state prove each element of an offense beyond a reasonable doubt. . . . It follows that insufficiency of the evidence to support a jury's ultimate findings on each of these elements requires acquittal." (Citation omitted.) *State* v. *Crafts*, 226 Conn. 237, 244, 627 A.2d 877 (1993). Ultimately, "[i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case

involving substantial circumstantial evidence." (Internal quotation marks omitted.) Id., 245.

Under § 21a-278a (b), "[a]ny person who violates section 21a-277 or 21a-278 by . . . possessing with the intent to sell . . . to another person any controlled substance in or on, or within one thousand five hundred feet of . . . a public housing project . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of . . . possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of . . . a public housing project . . . ." In *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995), this court concluded that in order to establish a violation of § 21a-278a (b), the state must prove that the defendant intended to sell the drugs in his or her possession at a specific location that is within the prohibited zone.

We affirmed the "particular place" requirement in *State* v. *Hedge*, 297 Conn. 621, 659–60, 1 A.3d 1051 (2010), emphasizing that the "[m]ere possession of narcotics with an intent to sell at some unspecified point in the future, at some unspecified place, is not enough [to prove a violation of § 21a-278a (b)]." (Internal quotation marks omitted.) "Accordingly, we review the sufficiency of the state's evidence under § 21a-278a (b) mindful that the state bears the burden of proving that the defendant intended to sell or dispense narcotics at a particular place. Further, because the defendant's intent is an element of the crime, the state must establish that intent beyond a reasonable doubt." *State* v. *Lewis*, 303 Conn. 760, 770, 36 A.3d 670 (2012). To meet its burden of proof, the state is not required to prove that the defendant knew that the location in which he intended to sell drugs was within 1500 feet of a public housing project, but that he intended to sell the drugs at a particular location, which location is within 1500 feet of a public housing project. See *State* v. *Denby*, supra, 235 Conn. 482–83.

The defendant does not necessarily dispute that the state produced sufficient evidence to suggest that he intended to sell narcotics at some point, at some unspecified location. He claims, instead, that the state failed to introduce any evidence to prove beyond a reasonable doubt that he intended to sell narcotics at a particular location in or within 1500 feet of Greene Homes. The state counters that there was a " 'reasonable and logical' connection between the evidence presented in this case and the reasonable inference, drawn by the jury, that the defendant intended to sell narcotics within 1500 feet of [Greene Homes]." Specifically, the state points to testimony that the defendant regularly visited Patrick's apartment in Greene Homes two or

three times per week, that Greene Homes is known for drug trafficking, that the defendant made a business arrangement with Patrick to store items in the hallway closet in her apartment in Greene Homes, and that narcotics packaged for sale and other materials suggesting the packaging and sale of narcotics were recovered from the hallway closet during the search of Patrick's apartment. In short, the state contends that "the defendant's regular presence in the prohibited area, while possessing drugs with the intent to sell, supports a reasonable inference that he intended to sell the drugs in that prohibited area . . . ."

In this context, we turn to the question of whether the jury in the present case reasonably could have found, based upon the facts and the reasonable inferences drawn therefrom, that the defendant had the intent to sell the narcotics recovered during the search of Patrick's apartment at some location within 1500 feet of Greene Homes. Testimony established that the defendant was apprehended in Patrick's apartment in Greene Homes and that the defendant regularly visited the apartment and had arranged to store jackets and a shoe box in the hallway closet. During the apartment search, the police recovered thirteen bags of crack cocaine, ziplock bags, scales, razor blades, sixteen cell phones, weapons, ammunition and cash, leading to the reasonable inference that the drugs were intended for sale, rather than for personal use. The police recovered the cash from the defendant's person and the crack cocaine from the pocket of a jacket, identified as the defendant's, that was stored in the closet. The search did not reveal a crack pipe or similar device for use of the narcotics in the apartment which bolstered the inference that the drugs were intended for sale.

Although the foregoing evidence provided ample support for the inference that the defendant intended to store and package narcotics in Patrick's apartment for sale, it did not have any probative value with respect to the intended location of the sales, that is, whether the defendant intended to sell the narcotics in Patrick's apartment or in another location within 1500 feet of Greene Homes. There was no evidence of an actual or attempted sale within 1500 feet of Greene Homes, and the only evidence on this issue was Patrick's testimony that she had never seen the defendant sell drugs in her apartment or in the area of Greene Homes. The jury was free to disbelieve Patrick's testimony, but such disbelief could not provide an adequate evidentiary basis for the opposite finding, that the defendant intended to sell narcotics in Patrick's apartment or in the area of Greene Homes. See *State* v. *McCarthy*, 105 Conn. App. 596, 608, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). Because the state did not produce any evidence from which the jury reasonably could have inferred that the defendant intended to sell narcotics within 1500 feet of Greene Homes, the defen-

dant's conviction for violation of § 21a-278a (b) cannot stand.

The state argues that evidence that the defendant regularly visited Patrick's apartment, and was not merely passing through Greene Homes, coupled with evidence of the defendant's business arrangement with Patrick to store and package items in her apartment located in an area known for drug trafficking, supports the inference that the defendant intended to sell drugs in Greene Homes. According to the state, the facts of the present case resemble those in *State* v. *Reid*, 123 Conn. App. 383, 398, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010), in which the Appellate Court concluded that the jury reasonably could infer the defendant's intent to sell drugs within 1500 feet of a public housing project from his extended presence in a high crime, drug trafficking area with drugs in his possession.

In *Reid*, however, the defendant was arrested in a parking lot, located within 1500 feet of a housing project. The parking lot was described to the jury as " 'an open air drug market' where drug transactions frequently transpired." Id., 394. Not only was the defendant in *Reid* present in the parking lot for several hours, but he engaged in behavior that was " 'consistent with immediate drug sales,' " such as backing away from police officers when they approached him and tossing a plastic bag containing narcotics to the ground. Id., 398. In contrast, in the present case, although the state produced evidence that Greene Homes generally is known as a place where drugs can be purchased, the state did not produce any evidence to suggest that Patrick's apartment, like the parking lot in *Reid*, was known as a place to buy drugs, that the defendant had spent time in areas of Greene Homes known as drug transaction areas, that the defendant was seen loitering in or near Greene Homes other than on his way to or from Patrick's apartment, that the defendant engaged in behavior consistent with immediate drug sales, such as attempting to evade custody or dispose of the drugs, or that the defendant had ever sold drugs anywhere in or near Greene Homes or Patrick's apartment.

The facts of the present case more closely resemble the facts in *State* v. *Kalphat*, 134 Conn. App. 232, 234–35, 38 A.3d 209 (2012), in which the defendant was arrested in his home, within 1500 feet of a school, in possession of approximately ten pounds of marijuana and a box containing $3033, ziplock bags and two scales. In *Kalphat*, the Appellate Court concluded that although the evidence supported the reasonable inference that the defendant intended to repackage the marijuana for sale, the record was "devoid of evidence from which the jury reasonably could have determined the precise location or locations of any such sales. Consequently . . . on the record before it, the jury only could speculate about

the precise location or locations of any such sales
. . . .'' Id., 241.

In *Kalphat*, the Appellate Court rejected the state's
argument that because it reasonably could be inferred
that the marijuana was going to be packaged in the
defendant's home for sale, "it also would be reasonable
to infer that the sales would take place there." Id. Like-
wise, in the present case, although the jury reasonably
could have inferred that the defendant was storing and
packaging narcotics in Patrick's apartment for the pur-
pose of selling them, that inference did not lead to the
further reasonable inference that the sales would take
place in Patrick's apartment or anywhere else within
1500 feet of Greene Homes. Moreover, the Appellate
Court's analysis of the evidence in *Kalphat* contradicts
the state's contention in the present case that "[a]
rational juror could reason that the proximity of the
location where the drugs are being stored to the prohib-
ited area is probative of whether the defendant intended
to sell the drugs in that prohibited area, at least where
the evidence does not establish that the presence of the
drugs in that location was fleeting and a consequence of
them being merely in transit." In *Kalphat*, the fact that
the marijuana was stored in the defendant's home
within the prohibited area was not probative of whether
the defendant intended to sell the drugs there. *State* v.
*Kalphat*, supra, 134 Conn. App. 241. Here, the fact that
the defendant had arranged with Patrick to store certain
items that contained narcotics in her apartment did not
indicate that he intended to sell the drugs there or
anywhere else within 1500 feet of Greene Homes. Simi-
larly, the fact that the defendant had $1125 in mixed
denominations in his possession at the time of his arrest
permitted the inference that he obtained the cash by
selling drugs, but it had no probative value as to the
location where the drugs had been sold.

Moreover, even if we assume, as the dissent contends,
that the evidence might have supported a reasonable
inference that the defendant intended to sell drugs
within the prohibited zone, the cumulative force of the
evidence nevertheless was not sufficient to prove that
intent beyond a reasonable doubt. The evidence viewed
in the light most favorable to sustaining the jury's ver-
dict lent, at best, only a modicum of support to the
inference that the defendant intended to sell the drugs
within the prohibited zone. The evidence was equally
supportive of an inference that the defendant intended
to sell the drugs outside of the prohibited zone or any-
where that the opportunity presented itself. This court
has concluded that where "the evidence is in equipoise
or equal, the [s]tate has not sustained its burden [of
proof] . . . ." (Internal quotation marks omitted.) *State*
v. *Moss*, 189 Conn. 364, 369, 456 A.2d 274 (1983); see
also *United States* v. *Glenn*, 312 F.3d 58, 70 (2d Cir.
2002) ("if the evidence viewed in the light most favor-
able to the prosecution gives equal or nearly equal cir-

cumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt" [internal quotation marks omitted]).

The state argues in its brief that "the jury reasonably could have inferred that, regardless of whether [the defendant] also may have intended to sell the drugs at a location outside the prohibited area, he nevertheless possessed a simultaneous intent to sell the drugs to any and all potential buyers within [the prohibited zone] . . . as the opportunities presented themselves." As we held in *Hedge*, however, the state's burden of proof cannot be satisfied by proof of a general willingness to sell "at some unspecified point in the future, at some unspecified place . . . ." (Internal quotation marks omitted.) *State* v. *Hedge*, supra, 297 Conn. 660. Thus, the inference that the defendant might have been willing to sell to a customer who happened to show up at Patrick's apartment is not the same as proof beyond a reasonable doubt that the defendant possessed the narcotics with the intent to sell them from Patrick's apartment or at some other location within 1500 feet of Greene Homes. It is unlikely that the defendants in *Hedge* and *Lewis* would have passed up opportunities to sell the drugs they were carrying to any customers who presented themselves, but such willingness does not satisfy the state's burden to prove beyond a reasonable doubt that the defendant intended to sell the narcotics at a particular location within 1500 feet of a public housing project.

Because the state has failed to satisfy its burden to prove beyond a reasonable doubt that the defendant intended to sell the narcotics within 1500 feet of Greene Homes, the defendant is entitled to a judgment of acquittal on the charge of possession of narcotics with intent to sell within 1500 feet of a public housing project. As a result of the reversal of this conviction, the case must be remanded to the trial court for resentencing on the remaining counts of which the defendant has been convicted. "Pursuant to [the aggregate package theory of sentencing], we must vacate a sentence in its entirety when we invalidate any part of the total sentence. On remand, the resentencing court may reconstruct the sentencing package or, alternatively, leave the sentence for the remaining valid conviction or convictions intact." (Internal quotation marks omitted.) *State* v. *Jordan*, supra, 314 Conn. 116.

The judgment of the Appellate Court is reversed only with respect to the defendant's conviction of possession of narcotics with intent to sell within 1500 feet of a public housing project and the case is remanded to that court with direction to remand the case to the trial court with direction to render judgment of acquittal on that charge and to vacate the defendant's sentence and resentence him on the remaining charges; the judgment

of the Appellate Court is affirmed in all other respects.

In this opinion ROGERS, C. J., and PALMER, ZARE-LLA, EVELEIGH and McDONALD, Js., concurred.

[1] The defendant also was charged with and convicted of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and two counts of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). In his appeal to the Appellate Court, the defendant did not challenge his conviction of criminal possession of a firearm. *State* v. *Stovall*, 142 Conn. App. 562, 564 n.1, 64 A.3d 819 (2013). The Appellate Court affirmed the defendant's conviction of possession of narcotics with intent to sell by a person who is not drug-dependent and the defendant does not challenge that determination in the present appeal. Id., 572, 582.

[2] We granted the defendant's petition for certification to appeal limited to the following question: "Did the Appellate Court properly conclude that there was sufficient evidence to support the jury's verdict that the defendant intended to sell narcotics within 1500 feet of a public housing project . . . ?" *State* v. *Stovall*, 309 Conn. 917, 70 A.3d 40 (2013).

[3] The Appellate Court rejected the defendant's claims that the trial court improperly had admitted a controlled substance report and that the evidence was insufficient to support the defendant's conviction of the charges of possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of a public housing project. *State* v. *Stovall*, supra, 142 Conn. App. 572, 574–75.